MAINE SUPREME JUDICIAL COURT          Reporter of Decisions
Decision:    2026 ME 73
Docket:      And-25-441
Argued:      June 2, 2026
Decided:     July 30, 2026

Panel:       STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, LIPEZ, and TAUB, JJ.

TOWN OF SABATTUS

v.

L.P. POIRIER & SON, INC., et al.

TAUB, J.

[¶1]  This case involves a gravel pit in the Town of Sabattus that violated the terms upon which the Town had permitted it to operate.  The owners of residential properties adjacent to the mining operation, whom we collectively refer to as the Abutters,[1] appeal from a judgment of the District Court (Lewiston, *Churchill, J.*) approving a consent judgment between the Town and the owners of the mining operation, Raymond N. Poirier and L.P. Poirier & Son, Inc. (collectively, Poirier).[2]  The Abutters argue that the consent judgment

---

[1] The Abutters are Christopher Tweedie, Jane Eden Guthro, Leslie Cook, Richard Charest, Gerald Hagerty, James Montrone, Jonna Wilson, Timothy Richard, Michael Todorsky, and Scott Fyfe.

[2] Kristie J. Berube also holds title to the land at issue and is a party-in-interest.  The Town entered into a separate consent judgment with Berube that is nearly identical to the consent judgment between the Town, Raymond Poirier, and L.P. Poirier & Son, Inc.  The Abutters did not object to the Berube judgment in the District Court, and that judgment does not appear to be at issue in this appeal.  To the extent that the Berube judgment is at issue, because the judgments are substantively the same, our determination with respect to the Poirier judgment applies to the Berube judgment.  Although

2

violates state and local law and that the court erred in approving it. We disagree and affirm the judgment.

## I. BACKGROUND

[¶2] In 2003, the Town granted Poirier conditional approval to mine gravel from a four-acre excavation area abutting F. Sanborn Road, a private road along the shore of Sabattus Pond. The Abutters own properties along the shore and use F. Sanborn Road for access. The 2003 conditional approval required Poirier to maintain a buffer zone between F. Sanborn Road and the edge of the excavated pit and maintain a two-to-one slope ratio from the edge of the mining area. The Town also approved Poirier's reclamation plan.

[¶3] In November 2023, the Town received a letter from an attorney representing one of the Abutters asking the Town to assess the gravel pit's compliance with the conditional approval. After the Town did so and identified various concerns, Poirier agreed to cease further excavation operations.

[¶4] In December 2023, the Town issued a notice of violation to Poirier for violating the conditional approval by expanding the pit beyond four acres and into the buffer zone and not maintaining a two-to-one slope ratio from the mining area line. The Town also cited Poirier for expanding the pit into the

Berube, L.P. Poirier & Son, and Raymond Poirier are parties to this appeal, they all adopted the brief filed by the Town.

Sabattus Pond Shoreland Zone in violation of the Town's Shoreland Zoning Ordinance. *See* 38 M.R.S. §§ 435-448 (2026).

[¶5] Throughout 2024 and early 2025, the Town and Poirier engaged in discussions to resolve the matter. In spring 2025, the Town filed a land use citation and complaint, *see* M.R. Civ. 80K, and a proposed consent judgment for court approval. The court granted the Abutters' motion to intervene, and the Abutters filed an objection to the proposed consent judgment. The court held a hearing on the proposed consent judgment and the Abutters' objection on June 5, 2025.

[¶6] The consent judgment requires Poirier to submit and execute a new reclamation plan, stabilize the berm on the edge of the excavation zone along F. Sanborn Road, and construct a "Reclaimed Buffer in the 30 feet east of the Berm," i.e., between the road and the excavated zone. The judgment states that Poirier has no further mineral extraction rights and that "this Consent Judgment grants [Poirier] no right to use the Premises." Additionally, Poirier must "cause all work at the Premises to be performed in accordance with the Reclamation Plan, Sabattus Code, Maine law, and the Maine Erosion and Sediment Control Best Management Practices."

4

[¶7]  On September 9, 2025, the court approved the consent judgment. The Abutters timely appealed.  *See* M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶8]  Relying on *Pike Industries, Inc. v. City of Westbrook*, the Abutters argue that the consent judgment violates Maine statutes and the Town's own ordinances, and that, therefore, the court erred in approving the judgment.  In *Pike*, we held that while a municipality has the right to settle lawsuits, "consent decrees that affect public rights should be subject to closer scrutiny than those that resolve purely private disputes."  2012 ME 78, ¶ 23, 45 A.3d 707.  We stated that

> when a court is asked to approve a consent decree . . . that will affect the enforcement of a land use ordinance, it should ensure . . . that entering the decree is fair, adequate, and reasonable, and . . . (1) the parties have validly consented; (2) reasonable notice has been given to possible objectors and they have been afforded a reasonable opportunity to present their objections; (3) the consent decree will not violate the United States or Maine Constitutions, a statute, or other authority; (4) the consent decree is consistent with express legislative objectives and other zoning-related public policy considerations; and (5) the consent decree is reasonable and is not legally impermissible in its effects on third parties.

*Id.* ¶ 24.  The Abutters argue that the consent judgment violates elements three, four, and five of this standard.  Their primary grievance with the consent judgment is that it requires Poirier to construct a reclaimed buffer zone of thirty

feet. They argue that this provision violates 38 M.R.S. § 490-D (2026) and the Town's Site Plan Review Ordinance, both of which they claim require Poirier to create a buffer zone of at least fifty feet.

[¶9] "For the purposes of our appellate review, whether a consent decree comports with legal requirements is a question of law that we review de novo." *Pike Indus.*, 2012 ME 78, ¶ 14, 45 A.3d 707. Because a "consent decree is primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating," an intervenor or other third party cannot "block the decree merely by withholding consent." *Butler v. D/Wave Seafood*, 2002 ME 41, ¶ 13, 791 A.2d 928 (quotation marks omitted). Therefore, "[n]otwithstanding the objection of intervenors, if the court finds that each of the five elements identified above is met, it may approve the decree." *Pike Indus.*, 2012 ME 78, ¶ 28, 45 A.3d 707.

## A.    State Law

[¶10] Maine statutes set performance standards for certain excavation operations. *See* 38 M.R.S. §§ 490-A to 490-N (2026). Two of them are at issue here. Title 38 M.R.S. § 490-D(6-A)(C) requires that "[a] natural buffer strip at least 50 feet wide . . . be maintained between the working edge of an excavation and any private road or right-of-way." Section 490-D(4) prohibits the removal

6

of "[e]xisting vegetation within a natural buffer strip." "If vegetation within the natural buffer strip has been removed or disturbed by the excavation or activities related to the excavation before submission of a notice of intent to comply, that vegetation must be reestablished as soon as practicable after filing the notice of intent to comply." *Id.*; *see also* 38 M.R.S. § 490-C (requiring the filing of a notice of intent to comply with the performance standards before the total area of excavation equals five or more acres).

[¶11]  It is not clear whether these standards apply here.  The standards apply only to excavation operations where "the total excavated area on a parcel is 5 or more acres."  38 M.R.S. § 490-B.  There is conflicting evidence in the record regarding whether the excavated area of Poirier's operation is at least five acres.  And even if it is, the standards nevertheless may not apply in this specific circumstance, where Poirier no longer has the right to perform excavation operations and is instead required to perform reclamation activities.  But we do not need to decide whether the standards apply because even if they do, we conclude that the consent judgment does not violate them.

[¶12]  The consent judgment requires Poirier to "construct a Reclaimed Buffer in the 30 feet east of the Berm" and does not explicitly require Poirier to reestablish vegetation on the buffer.  The consent judgment does not, though,

prohibit Poirier from constructing a larger buffer or revegetating the buffer. Thus, the requirements in the consent judgment do not conflict with the performance standards in section 490-D. Because the consent judgment expressly requires Poirier to "cause all work at the Premises to be performed in accordance with . . . Maine law," if the performance standards in section 490-D do apply, Poirier must comply with them.

[¶13]  Further, nothing in the consent judgment purports to immunize Poirier from enforcement of section 490-D by the Department of Environmental Protection, the agency charged with enforcement of the performance standards, if Poirier does violate those standards. 38 M.R.S. § 490-H.[3]  Therefore, the court correctly concluded that the consent judgment did not violate state law.

**B.    Ordinances**

[¶14]  The Abutters also argue that the court erred in approving the consent judgment because it violates the Town's 2004 and 2015 Site Plan Review Ordinances and its Shoreland Zoning Ordinance. The Abutters contend

---

[3]  The Abutters relatedly argue that the consent judgment is preempted by the performance standards in section 490-D. In light of our conclusion that there is no conflict between the standards and the consent judgment, we similarly conclude that the consent judgment is not preempted by section 490-D. Because Poirier will be required to comply with all applicable state laws, the consent judgment does not frustrate the accomplishment of section 490-D's purposes. *See Sawyer Env't Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 27, 760 A.2d 257.

8

that the consent judgment is "inconsistent with zoning-related public policy considerations, unreasonably interferes with a municipality's own land use regulatory scheme, and accordingly fails to satisfy *Pike's* third, fourth, and fifth elements."

[¶15]   "When we interpret an ordinance, we look first to the plain meaning of its language, and if the meaning of the ordinance is clear, we do not go beyond it."  *Moreau v. Town of Parsonfield*, 2024 ME 75, ¶ 27, 327 A.3d 48 (quotation marks omitted).  "In construing the language of an ordinance, the ordinance is to be considered as a whole."  *Id.* (quotation marks omitted).

### 1.    Site Plan Review Ordinances

[¶16]   The Abutters argue that the Town's 2004 and 2015 Site Plan Review Ordinances require gravel pits to have a buffer zone of at least fifty feet and that the consent judgment violates these ordinances by requiring only a thirty-foot buffer zone.  This argument, though, is based on a misunderstanding of how these ordinances operate.

[¶17]  The Town's Site Plan Review Ordinance has varied over the years.  It was first adopted in 1978.  A revised version was adopted in 2004, and the Town's current Site Plan Review Ordinance was adopted in 2015.  *See* Sabattus, Me., Site Plan Rev. Ord. (May 14, 2015).  The essential purpose and framework

of all three versions is the same. For new development proposals requiring site plan approval, the ordinances set forth the application process, the site plan information which must be provided, and the standards that will be used in deciding whether to approve the application. *See* Sabattus, Me., Site Plan Rev. Ord. §§ 2, 4-5 (May 14, 2015); Sabattus, Me., Site Plan Rev. Ord. §§ IV-VII (June 4, 2004); Sabattus, Me., Site Plan Rev. Ord. §§ IV-VI (March 11, 1978). These standards, however, may be waived. *See* Sabattus, Me., Site Plan Rev. Ord. § 5(C) (May 14, 2015); Sabattus, Me., Site Plan Rev. Ord. § VII(A) (June 4, 2004); Sabattus, Me., Site Plan Rev. Ord. § VII(A) (March 11, 1978). As the Town notes, the Site Plan Review Ordinances set forth the process by which a newly proposed project is evaluated and are not stand-alone zoning ordinances. *See* Sabattus, Me., Site Plan Rev. Ord. § 5(A) (May 14, 2015); Sabattus, Me., Site Plan Rev. Ord. § VI(A) (June 4, 2004); Sabattus, Me., Site Plan Rev. Ord. § VI(A) (March 11, 1978). Rather, if a site plan is approved, it is the site plan itself with which the project must comply.[4]

---

[4] Here, the gravel pit violated three site plan requirements by expanding beyond four acres, expanding into the 100-foot buffer zone, and not maintaining a two-to-one slope ratio, resulting in the Town bringing an enforcement action. While *Pike* requires that the consent judgment resolving the action not violate state law or the Town's ordinances, the Town retains discretion with respect to the extent to which Poirier is required to cure the violations. *See Pike*, 2012 ME 78, ¶ 36 n.8, 45 A.3d 707 (noting that municipalities retain discretion "to settle enforcement actions by, for example, agreeing to waive or reduce the penalties that may be ordered, including fines and correction of the violation, in exchange for some action on the part of the violator"); *see also* 30-A M.R.S. § 4452(3)(C) (2026).

10

[¶18]  The Town approved the site plan for Poirier's gravel pit in 2003 under the 1978 version of the Site Plan Review Ordinance.  That version had no specific buffer zone requirement.  *See* Sabattus, Me., Site Plan Rev. Ord. § VI (Mar. 8, 1978).  That the Town subsequently amended the Ordinance to require buffer zones for gravel pits is of no moment.  Again, the Site Plan Review Ordinances are not themselves zoning ordinances but instead set forth standards for the approval of new projects.  The consent judgment does not conflict with the Site Plan Review Ordinances because the consent judgment is not an "application[] for Site Plan Review approval," and therefore it does not need to meet the "minimum requirements for approval."  *See* Sabattus, Me., Site Plan Rev. Ord. § 5(A) (May 14, 2015); Sabattus, Me., Site Plan Rev. Ord. § VI(A) (June 4, 2004).

[¶19]  Even if the 2004 and 2015 Site Plan Review Ordinances somehow apply to gravel pits that received site plan approval under the 1978 ordinance, Poirier is no longer operating the gravel pit.  The consent judgment does not allow Poirier to use the premises or extract minerals.  Instead, it sets forth the actions that Poirier must take to reclaim the area.  Nothing in the 2004 or 2015 ordinances suggest that they apply to the reclamation of a previously approved project.

[¶20]   To the contrary, the 2015 Site Plan Review Ordinance requires buffer strips "between the location of any extraction of materials and all property lines."  Sabattus, Me., Site Plan Rev. Ord. § 5(B)(d)(1) (May 14, 2015).  The 2004 ordinance requires minimum setbacks for "excavation operations."  Sabattus, Me., Site Plan Rev. Ord. § VI(A)(22) (June 4, 2004).  Because there is no longer any extraction of material or excavation operations, these requirements are inapplicable.

## 2.   Shoreland Zoning Ordinance

[¶21]   Next, the Abutters argue that the Town violated its Shoreland Zoning Ordinance by allowing an "illegal structure or use to continue."  Sabattus, Me., Shoreland Zoning Ord. § 16(I)(3) (May 30, 2009).  The Abutters first cite a provision of the Shoreland Zoning Ordinance which states that

> municipal officers . . . are hereby authorized to enter into administrative consent agreements for the purpose of eliminating violations of this Ordinance and recovering fines without Court action.  Such agreements shall not allow an illegal structure or use to continue unless there is clear and convincing evidence that the illegal structure or use was constructed or conducted as a direct result of erroneous advice given by an authorized municipal officer.

*Id.*  The Abutters then rely on this provision to argue that the Town may not enter into an agreement that allows a violation of the Town's *Site Plan Review Ordinance* to continue.  They do not, however, identify a provision of the

12

*Shoreland Zoning Ordinance* that the consent judgment violates or argue that there is an existing illegal structure or an ongoing use in violation of the Shoreland Zoning Ordinance.[5]

[¶22]  Section 16(I)(3) is clear that it applies only to violations of the Shoreland Zoning Ordinance, not violations of other Town ordinances.  *Id.* (stating that municipal officers may settle "for the purposes of eliminating violations of *this Ordinance,*" but that "*[s]uch* agreements" may not allow illegal uses to continue (emphasis added)).  Because the Abutters fail to identify a specific provision of the Shoreland Zoning Ordinance that the consent judgment violates, their argument that the Town settled the dispute in violation of section 16(I)(3) of the Shoreland Zoning Ordinance fails.

## C.  Public Policy and Effect on Third Parties

[¶23]  Finally, the Abutters argue that the consent judgment is contrary to zoning-related public policy and is impermissible because of its effects on third parties.  *See Pike Indus.*, 2012 ME 78, ¶ 24, 45 A.3d 707.  "[C]ourts should uphold the public policy favoring the settlement of disputed claims by deferring to the reasonable judgments and compromises made by the settling parties.

---

[5] At oral argument, counsel for the Abutters conceded that the consent judgment does not directly violate the Shoreland Zoning Ordinance but argued that the ordinance still applied because the pit encroached into the Shoreland Zone.

However, the court's deference should be tempered by the separate public policy favoring the uniform applicability and enforcement of zoning ordinances." *Id.* ¶ 25. "[W]hile an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have the power to block the decree merely by withholding its consent." *Butler*, 2002 ME 41, ¶ 13, 791 A.2d 928.

[¶24] Here, where the thirty-foot buffer does not violate state law or town ordinances, and the consent judgment is consistent with town ordinances in all other respects, we cannot say that the judgment unreasonably interferes with the Town's land use scheme. The Abutters essentially argue that an inconsistency between a consent judgment and a town's ordinances should result in the consent judgment being rejected. As discussed above, there is no inconsistency. In any event, Abutters' argument is neither consistent with *Pike*, which contemplates inconsistencies, nor public policy in favor of allowing settlements. The fifth *Pike* factor specifically "calls upon the court to consider, among other things, whether the extent to which a consent decree will interfere with a municipality's land use regulatory scheme is no greater than that reasonably needed to achieve the consent decree's objectives." *Pike Indus.*, 2012 ME 78, ¶ 25, 45 A.3d 707. The fact that the court must weigh the degree

to which a consent decree *interferes* with a land use scheme recognizes that a consent decree need not be fully consistent with all local land use regulations. *Id.*; *see Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 5 n.3, 746 A.2d 368 (noting entry of consent decree that required part, but not all, of a violating structure to be removed). It is hard to see how municipalities could settle land use disputes if those settlements had to be strictly consistent with all local ordinances.

[¶25] Finally, the consent judgment does not dispose of any independent claims the Abutters may have, *see Butler*, 2002 ME 41, ¶ 13, 791 A.2d 928, and their claims that the thirty-foot buffer would interfere with the F. Sanborn Road right-of-way or their adjacent properties are speculative. In the absence of a concrete and particular interference with their rights, we cannot say that the consent judgment has a legally impermissible effect on the Abutters.

The entry is:

Judgment affirmed.

---

Keith P. Richard, Esq., and Colin W. Hull, Esq. (orally), Archipelago, Portland, for appellants Christopher Tweedie, Jane Eden Guthro, Leslie Cook, Richard Charest, Gerald Hagerty, James Montrone, Jonna Wilson, Timothy Richard, Michael Todorsky, and Scott Fyfe

Eamonn R.C. Hart, Esq. (orally), and Michael E. Carey, Esq., Brann & Isaacson, Lewiston, for appellee Town of Sabattus

Zachary B. Brandwein, Esq., Dentons Bingham Greenebaum LLP, Portland, for appellee Kristie J. Berube

Lewiston District Court docket number CIV-2025-92
FOR CLERK REFERENCE ONLY